yep you may proceed thanks very much your honor and i'd like to reserve three minutes for rebuttal may it please the court alan schoenfeld for jp morgan chase everyone agrees that as applied to loans held by federal savings associations california's interest on escrow law is preempted by vola and it's implementing rules this is not a federal savings association and so plaintiffs argue that once washington mutual sold its loans to chase wamu's status is a thrift and the power of thrifts to sell mortgages under hola free from state law restrictions became irrelevant in other words on plaintiff's view hola's field preemption of state laws restricting the ability of savings associations to sell loans ceased to apply and california's interest on escrow law started to apply as soon as plaintiff's mortgages were sold that view can't be correct under hola and the ots regulations as this court explained and spilled this the proper analysis and evaluating whether a state law is preempted under the ots preemption regulation section 560.2 begins with the categories of state law listed in 560.2b if the state law restriction is found there the analysis ends there too the law is preempted and that's precisely this case to ask a question what about uh the regulation 560.2 in the less neck decision uh our court it wasn't the exact same uh regulation i guess it actually was uh a regulation under the national well they said little if any deference under skidmore do you disagree with that do you think that there's more uh a deference it's due to uh the regulation of 560.2 here i do your honor you know congress gave um the office of thrift supervision and again i don't think there's any dispute in this case that we're dealing with the ots reg because these contracts were entered into prior to the effective date of dodd-frank so we're talking about the and that was different in less neck right less neck was i think less neck applied dodd-frank i think it did it applied certain provisions of dodd-frank 1639 the tela provision but to answer the question you initially asked um congress vested ots's predecessor and ultimately ots with the authority to preempt the i apologize i was going to ask about 560.2 though which you seem to rely upon and then i'll ask as well about the statutory authority for 560. 560 says that ots occupies the entire field of lending regulation for federal savings associations i mean almost by definition uh this question of state escrow interest isn't related to lending regulation associated with federal savings associations is it it deals with uh escrow interest on national banks so 560.2a what your honor just quoted is a broad statement of the regulations preemptive forks and i think what the supreme court has made clear since the planter's case is that the power to lend entails the power to sell to sell and so what we see in 560.2b is a new an enumeration of categories of state law that ots concluded are preempted as applied to federal savings follow along with me on 560 b2 that's the controlling uh provision right yeah um and the well i'm referring now to 12 usc 1463 which is the underlying statute right uh i think it's 14 it's 1463 and 1464 correct so the authority to pass the regulations under b2 right 1463 b2 so i think there's also 1464 c1 which refers to express authority that says to the extent specified in regulations of the controller not a controller previously ots a federal savings association may invest in sell or otherwise deal in the following loans and other we're not talking there's no uh effort by california to stop the sale of these federal loans it's just an um it's just and it's not even an um uh an effort by california to impose escrow interest on loans held by federal savings and loans it's just an effort to impose interest on escrow monies held by national banks so the the submission in this case is that the application of this california statute um interferes with or is regulates or otherwise affects which is the language of 560.2a the ability of federal savings associations to sell mortgage loans and so um you it may have some it might have some they they challenge whether it has any impact um and it you know you're actually asking for a bit of an advantage over uh federal banks that that come up with mortgages but um i but this seems like it would have a massive impact on in the marketplace wouldn't it i mean you're talking about all these banks that are originated without requiring to pay interest i mean how much of the plaintiff seeking here in damages so we know that the plaintiffs are seeking at least five million dollars in damages five how much five million or five million because they assert capital jurisdiction but the luzmat case for example which was also a california-only class settled for either 30 or 35 million um with a that's just one bank that's just that's just one bank in just one state so we're talking about billions of dollars out in the market that would have to be accounted for in some way by reselling uh by reselling these these loans right i mean obviously if you have a loan where you don't have to collect interest and you have to resell it where they have to pay interest um uh they're not going to pay as much for that i think that's precisely right your honor and i think it's worth remembering that part of the purpose of the homeowners lending act or the homeowners loan act was to establish federal savings associations that would deal in mortgages and the ability of the fsa's federal savings associations to sell those mortgages in order to free up cash and lend more well at the time the law at the time the law was passed uh mortgages weren't even sold it was passed in 33 it was passed in mortgages and mortgages weren't sold until some time later well so the first regulation specifically addressing the ability of threats to sell loans was enacted in 1938 so it was a short time after the original enactment of hola but congress has over time explicitly recognized the importance of fsa's being able to sell mortgages the operative provision here the ones that your honor and i just went back and forth on 1463 and 1464 were enacted in 1978 and so since at least that time and i think there's no question that that's the version of hola that governs this case since at least that time congress has recognized that fsa's have a federally authorized power to sell loans and ots is recognized in its preemption regulation that all set all state laws that would purport to regulate or otherwise affect the ability of an fsa to sell a loan are preempted and so for the reasons that um for the precise reason what what what what's that i'm sorry what statutory authority says that any law that would affect the ability to sell loans which is 560 point that's 560.2a so 1464 is what gives ots the authority to promulgate a regulation relating to congress relating to federal mortgages and then 560.2a specifically says um federal savings associations may extend credit as authorized under federal law including this part with without regard to state laws purporting to regulate or otherwise affect their credit activities and then 560.2b is a set of illustrative examples of state law requirements that ots has concluded would in fact accomplish those ends and so are impermissible as applied to federal savings associations. Let me take it just to a bit of question is there under our kaiser are you saying there's there can never that the office of thrift supervisor or um it has the ability to basically come up with any uh any regulation that might in some ways uh help federal threats? So with respect to thought with respect to the ots regulation i don't think our or kaiser's is implicated that would relate to the agency's interpretation of its own regulation which i think would go to the opinion letters but to answer your question directly the supreme court made entirely clear in gala quest that this is a field preemptive regime it is a rare type of preemptive regime but it does apply to federal threats and i think is this court recognized in sylvis and the san francisco when you said field field when you mentioned field preemptive it deals with a complete preemption of state regulation of federal threats i think that's whether a restriction on the ability of a federal threat to sell a loan including by imposing substantively different financial terms on the purchaser and i think it's worth pointing out in this respect that the california statute of issue here 29 54.8 only applies to chase because the statute on its face says it applies to purchasers of mortgages and so it is expressly chase as the purchaser and because it regulates chase as the person purchaser it necessarily has implications for the federal thrift as the seller and so it interferes with um or purports to regularly or otherwise affects the ability of the the answer to that question i mean this obviously involves a very large um purchase of loans when wamu failed in 2008 but i don't know the answer to your question your honor can i ask midland the second circuit in the midland funding case uh they came out the other way arguably the other way but that was under the national banking act um and they said that which applies conflict preemption not uh not field preemption are we if we were to find this preempted in this case um would we be in conflict with midland funding no not at all because for for the reason that you just gave this is a case about hola preemption whereas midland was about the national bank act i think there's one important similarity however between or there would be one similarity if the court were to which is as follows midland funding is not a national bank it's a third-party debt purchaser and the court in that case considered whether the national bank act preempted the state usually cap as applied to midland because it understood at bottom that the question was whether application of the state law to midland would interfere prevent or significantly interfere under barnett bank with the national bank originators ability to sell their loans that's precisely the way that the court should frame the question here the question is whether application of this state law requirement to mortgages originated by a federal savings association would interfere with the federal savings association's ability to sell their loans and so the the question is framed identically in both cases but that case reached a different conclusion because the national bank act applied whereas it does not apply here with the dog with the dog franks the issue's gone away with regard to loans that would be generated by federal uh thrifts now yeah for mortgages so this is just for it's just for so your argument in general is um we might uh uh we are going to have to pay interest on loans that we purchase uh from here on from federal thrifts but the mere fact that we have to pay interest on escrow accounts for loans that we purchased in the past might in the future make it more uh difficult for federal thrifts to sell future loans so it's an odd it's an odd kind of a historical question i think the question is when chase acquired these loans in 2008 did it assume an obligation under either federal preemption law or the mortgages to pay interest on escrow and because application of that obligation or imposition of that obligation would have interfered with the thrift's ability to sell mortgages it was preempted under the prevailing regulation at the time well the district court here made the decision that would only be forward right you'd only have to pay this escrow on balances held on your accounts um going for escrow balances that customers kept with you so i don't think there was any dispute in the in the district court as to whether there was an obligation for chase to pay interest on escrow for the loans during the time that they were held on wamu i think those claims probably would have been time barred but in any event i believe we can certainly ask my my friend on the other side but i don't think there was any argument that wamu was ever under an obligation to pay interest on escrow during the times that they held these loans that they had originated yeah because they're a federal thrift unlike chase i understand your honor's point but our submission here is that what matters for purposes of the preemption analysis as this court approached the question in campedoglio and as just nelson pointed out i think the second circuit approached the question in madden when you impose the state law requirement you are trenching on terrain that ots has said is preempted because it affects the ability of a thrift to sell loans in the market i see my tongue is up i'm happy to answer yeah no we'll give you i mean uh we'll give you time for rebuttal so thank you thank you your honor uh thank you very much uh glenn danis uh from robin's caplan for uh appellate uh mcshannock so there are five reasons here why california civil code 29 54.8 uh is not preempted by hola number one uh as applied to pace at national bank would simply be outside the scope of congress's in its former delegation of power to former ots 560. uh number two uh where there is a near incidental effect on uh on an actor out within the field um and i'm sorry where there's a mere incidental effect outside the field under court case law the travelers case from 1995 that speaks to the fact that that is it's not going to be preempted even under a field preemption analysis uh number three is there would be no conflict preemption here and there would in fact most likely be a conflict with the other panel decision in lessnack given the fact that here uh there is in fact another set of regulations the national bank act that applies to banks for their own conduct that is in fact what we have here and we've already found or this court has already found that there is no conflict between 29 54.8 and the national bank act which applies to case for its own for its own conduct uh number four there's no congressional intent whatsoever uh to show the preemption should hatch alone as it travels to a national bank for its own for its own conduct and in fact uh one of the questions earlier about the level of deference involved i think is precisely a good one given that the kaiser case from 2019 severely uh limited our deference and here the only two uh even possible uh points of um of congressional intent that are pointed to by chase are two opinion letters that say nothing about whether the uh whether the loan would actually take uh take preemption with it to subsequent non-federal savings association buyers number five there's simply no contract basis uh in order to uh to apply so can i can i jump in because i i think um uh you know the deference point i i think you're right uh that there's probably little if any deference but i view this no one had really focused on this in any of the prior opinions but the solicitor general this was um this was uh what solicitor general virilli under president obama when they filed uh they were asked to they found the meekest brief in the supreme court and they ultimately told the court not to take midland funding but they said specifically when congress enacted section 85 of the nba uh at the earliest statutory antecedent it was already established that a bank's power to sell loans was a necessarily implied corollary of the power to originate loans and that cites to the planters bank of mississippi versus sharp a 1948 uh supreme court case it seems to me that that is sort of the key here if if it's true that the ability to sell is implied within the ability to originate then doesn't that sort of answer the question because there's no disagreement that there is preemption for uh for the um in the first origination in this case the question is does that transfer to the successor in interest right that's correct your honor what i what i'm confused on is why no court has really since i mean even less neck didn't didn't grapple with this and maybe maybe they didn't need to be you know to reach their conclusion but the district court didn't uh didn't grapple with this at all but that the solicitor general's view seems uh far more consistent with an analysis of preemption that doesn't rely on deference uh to the regulation but just a a standard um theory that if you have the power to originate you also have the power to uh to transfer and that this impinges upon that and that by the way was what was in a case where it was conflict preemption and they said that conflict preemption uh the solicitor general's position was conflict preemption applied in the mba we have field preemption so i don't understand why it wouldn't even be a greater impact uh of preemption in this case anyway long-winded question but i i'm interested in your answer yeah well i would say a couple of things to that number one is the again i would point this this court to the traveler's opinion in 514 us 645 a u.s supreme court case dealing with erisa now i know my colleague on the other side had attempted to uh to distinguish that in their reply brief a footnote saying that well you know that uh allowed a new york state law to impose massive costs on insurance companies that would have an indirect effect on the cost or the the attractiveness of those insurance companies to erisa govern plans and there they found no preemption pause the field there of erisa was about erisa plans and this was not a direct regulation of erisa plan likewise here no one is saying that there is uh that there is uh that that the federal savings association doesn't have a right to sell loans this this regulation california's escrow law would merely make it slightly less attractive down the road in the secondary market put it on the same footing not only as all other loans that might be bought from from other let me push back on that because the solicitor general uh in the midland funding case put uh specifically rejected that argument as well uh and and again that was a conflict preemption case where you had to find that it prevents prevents was this the the key term prevents uh the ability to uh engage in the activity that's permitted and they the solicitor general argued that even under the prevents theory that con that the preemption applied here you've got with with field preemption you've got any ancillary effect and i don't understand how we shouldn't take the solicitor general's views uh into account here when they're the ones in the best position it seems to me to determine what was the purpose of the statute and i mean that the national banking act was adopted in the 1800s that was like that was 80 years before there was even a secondary market for these things and uh uh you know now we're talking about uh hola which was adopted five years before and it just strikes me that that is uh that's pretty conclusive that that there was an intent uh or should be an in an intent to countenance preemption in this context well i my answer to several things number one is although that might have been the u.s uh solicitor general's brief i believe that would set up a direct intra-circuit conflict with madden to find otherwise and to find that there is in fact conflict preemption here because of it all right number two we don't have to find con but that's my point we don't have to find conflict preemption well we have field so but but i i am interested in your views if we were to find preemption here your view is it would be in conflict with midland funding from the second circuit well it would be in conflict with midland funding and it would also be in conflict with lesnac i believe but my my my greater point is that there is not uh field preemption here and even if there were even if there were some way of saying that this is within the field of regulating a savings association by in fact doing nothing of the sort and placing a uh a restriction on a national bank for its own conduct even within hola if you look at section 560.2 c it says that certain state laws that directly affect a uh a federal savings association can be uh will not be preempted under field preemption if it's incidental or if the effect is incidental here we we well but that i think that's sort of my point is that are we looking at an incidental standard whereas midland funding was looking at a quote prevents standard well i i think that all of them would be under i i i take your honor's point and i think i see what you're saying the it is an incidental standard if you're going to find that this is within the realm of field preemption so if you're going to find that the field includes how can we so let me push back on that how can we not find that it's within the within the context because i mean even midland funding didn't say it was outside of the it just said it didn't transfer to a successor in interest and the supreme and the solicitor general specifically found that uh these escrow payments were within the field and and they found that there was conflict well well i think i think that they were not doing a field analysis there no they weren't but that's my point is if they were finding that there was in conflict it under under a conflict under uh uh a lesser standard how can it not be part of the field uh when we're talking about field preemption i mean nobody's debated that this isn't part of the field because the answer those are two different questions and two different types of questions whether it falls within the field is dependent on the statute words of the statute and the intent of congress there is not one iota statute oh i'm sorry go ahead no i was just gonna say there's not there's there's not one iota of statutory support for extending to a national bank for its own conduct the field of whole of preemption there is not one iota of congressional congressional intent to do that either but that's that uh opposing council was able to come up with being those two uh very sparse and for reasons that i won't i won't waste time on uh opinions that your view is that that's different under hola than it is under the national banking act that the the field if you will is a different field that for some reason in your view the national banking act has a broader field of what it preempts even though it requires conflict and not field preemption whereas under a whole uh the even though there's field preemption the field is narrower is that what you're arguing i i think that's one way of looking at it and and i would i would say that the you know whether it falls within the field of national bank act jurisdiction uh it doesn't answer the question the question there of course as your honor said is whether it creates a barrier to the obstacles and objectives of congress and there we already have the answer in this circuit it's no with respect to the same statute with respect to field preemption i'm just trying to get hold on with respect to this backup with respect to the same statute what case is that that's not that that's less than that with respect i thought less than that was a national banking act no no the statute i'm talking about is preemption of the same california regulation oh okay got it got it got it but but but what i would i guess what i would say is that with respect to field i'm just trying to to give your honors some some uh some bases for saying that even within a field preemption analysis even if you found that this that this was within the field it would still not be preempted if it only posed an incidental effect and here not only does this whole itself have in it a section for incidental effects that are not preempted where they directly regulate an fsa under 560.2 c but there's also the travelers case and u.s supreme court onioc case from 2015 that say what's an incident oh i'm sorry let let me let me try to address some questions on the kaiser because um we're we're talking here about 560.2 uh under kaiser or um is a regulating agency allowed to uh issue a regulation if it it doesn't um uh find support in the underlying statute uh no so so so so to answer your honors and even going back what part of the issue here is this 2003 opinion letter um the opinion letter didn't actually deal with this same question as to uh this the question posed in the opinion letter didn't actually deal with the preemption from state uh interest laws did it no no your honor um it dealt with the new jersey new york state but both of them owned by the same savings association right correct and so they posited an additional question and in that question they asked whether it could uh transfer beyond but let me take you to this the 2003 opinion letter um is it only valid if it uh if the underlying regulation is uncertain uh yes so uh as as justice horsuch said uh our deference after kaiser has been named and enfeebled and the new uh the and second it has to be reasonable third the interpretation has to be uh in show by its character and context that it's worth deference well just going to 560.2 the 12 cfr um is that ambiguous but about uh that the 2003 letter would respond to some ambiguity not even remotely i i don't think that those letters have any bearing on it because there would have to be an ambiguity as to whether in fact that 560 applies to a national bank for its own conduct and there is none so i i view those letters as effectively an amicus brief of sorts is that the proper way we should look at it to the extent they're persuasive to the extent they got it right we can consider them but well i your deference to them your your honor i guess i would say this if if either of letters had dealt with the question that we're dealing with here which is whether preemption would travel to a non-fsa for its own conduct i would say you know sure and then it would depend on how well reasoned they were whether it purported to be the agency's definitive determination etc etc here in both of those letters there's merely an afterthought and neither of them said anything about applying preemption to another non-federal savings association for its own conduct one of seemed like it was potentially saying that it might go to a third party and if they were attempting if someone was attempting to sue a federal savings association while it was held by the third party that there could still be a a a preemption defense and it might have traveled for that purpose but neither of those letters spoke to this problem can i can i i know you're out of time we'll uh but don't you know you can answer all the questions we have um so um the district court below reversed himself in a way right six years earlier he said that it was preemptive what what what changed i mean obviously the one thing that changed was there was more you know there were more district court opinions but i found it very interesting that he didn't look uh below to grapple with he didn't even look to midland funding or look to the solicitor general's views uh before the supreme court uh it just sort of seemed to take temperature of what other district courts were doing and where the flow was from the district courts could you address why you think that he changed his view on this sure uh one reason might be uh the fact that dodd frank has made this question really esoteric at this point because there really isn't a great potential uh for you know for unleashing a a terrible kind of tidal wave of it only relates to mortgages that are pre-2010 and that were sold to national banks afterwards but i think the district court here uh was motivated more by the fact that hola itself is a consumer statute a consumer protection statute and uh is really was really a height of sort of a new deal hope the little guy helped the homeowner kind of statute and therefore he was really saying that to allow it to be used by a national bank to shield its own conduct would be sort of a perverse and and really counterintuitive way of viewing it so i think that was number one and the second reason i think is really we in our briefing got deep into the legislative history he was really concerned here and we had supplemental briefing where both of us council and i submitted briefs where we both agreed that there was nothing in hola at all or even known in financial markets at the time where uh where the escort where mortgages were being sold on a secondary market and even in the many years since then while hola did amend itself 50 years later to allow for sale of mortgages never said anything about whether preemption non-federal savings association for its own conduct at most it said that this is something that a bank a federal savings association can do in the 1978 amendments and that's a far cry from there being a clear congressional mandate for this sort of preemption the states to preempt their uh them acting in their in their traditional police powers this place state law which frankly would be to really upset a very delicate federalism balance okay uh judge wallace or judge quinn do you have any further questions no thank you okay thank you counsel um and we'll let me say let me say it was a pleasure to hear you two argue uh whatever your pain is it's not enough it's just good to hear people come and know their case and difficult ones whichever way this comes out you've done a good job for your clients and for the court thank you very much your honor well and and uh judge wallace might have uh jumped ahead a little bit because we still got yeah don't don't blow it into your rebuttal he's already congratulated you so yeah i'll i'll try to keep it um brief and good um but i want to make really um three points the first one is there was obviously a lot of discussion about how this is a field preemptive routine which begs the and what's clear from hola as it has been amended over time and what's clear from the ots regulation is that the field very importantly includes the ability of federal savings associations to sell loans in the secondary market we cite ample authority for that proposition in our briefs the regulators very shortly after hola was enacted implemented a regulation making sure that fsa's was clear congress then um enacted a version of hola in 1978 which governs here which made the ability to sell loans unfettered there was a cap of 25 percent in the initial regulations and congress lifted that cap so the field includes the ability to sell um i i i was going to say i you know i think i addressed in my my initial argument i don't think there's any conflict here lesmac for the important reason that both of them concern the national bank act and lesmac made very clear in its opinion that the whole that whole is a different regime and that it wasn't a timing on how the question may have come out under hola with respect to the the analysis once you are within the field of what is preempted under um hola preemption you know i i heard my friend on the other side say that there is um that that the application of this state law would make loans slightly less attractive to an fsa purchaser i think he vastly understates the impact but in a field preemptive regime making the sale proposition slightly less attractive is enough to trigger preemption there are two important ways that i think and i promise i'll hurry up and finish up here but there are two important ways that i think it makes um the sale more difficult one is it strips a very important financial term that is part of the mortgage from the fsa's bargain it cannot sell its loan at full value to a non-fsa purchaser whether a national bank or otherwise the other important thing it does is it constrains the market if an fsa cannot sell a loan to another party except another fsa with the full terms of the mortgage and the full value intact the marketplace for fsa originated loans is constrained because you only have another fsa as a potential purchaser finally let me just say one thing on kaiser kaiser doesn't apply to the difference that is due to a full dress regulation it applies to what our apply to which is agency interpretations of regulations let me get let me let me go let me go to that describe 60.2 when was that enacted so i think 1996 version i apologize that we're currently dealing with right i think um there may have been amendments in between but we're basically talking about a regulation that was promulgated in 1996 okay they had the uh um they had the earlier decision uh talking about transferability of the of the preemption um why didn't they include some statement saying that people who purchase these loans would enjoy the the same um avoidance of state regulation so i guess i'll i don't know the answer to that but let me offer two observations which i hope help the first one is ots and promulgating its regulation in 1996 and we cite the federal register um commentary on this said we are carrying forward precisely the same preemption regime that operated beforehand and i think that carries forward why why wouldn't they why wouldn't they've been explicit if they intended to carry the 2003 opinion letter into it well so the 2003 opinion letter postdates the promulgation of this regulation and ots citing back to the baseline common law principle that you know the rights of the assignee or the purchaser are the same as the rights of the assignor and so the same preemption rules that apply to the assignor or the originator ought to apply to the purchaser or the assignee standing in his shoes but the language of the preemption still talks about um preempting for the federal industry right i i don't dispute that it applies on its face to fsa's but the question is it applies to the fsa's ability to sell so the question here is i think the court put it in capidoglio and as the court you know certainly recognized in madden is is the ability of the relevant federally regulated financial institution to sell its loan with maximum flexibility free from state intervention uh interfered with or affected by a state law requirement imposed on the third party purchaser okay uh absent further questions i think uh we've got the arguments you guys of both both counsel have been uh exceptional as judge judge well judge wallace already thank so thank you very much thank you all right
judges: Wallace, R. Nelson, Gwin